**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DOROTHY MCCULLUM and JIMMY FRAZIER,**

      **Plaintiffs,**

**v.**                                                   **Case No: 6:11-cv-1387-Orl-31GJK**

**ORLANDO REGIONAL HEALTHCARE SYSTEM, INC. and NORTH BREVARD COUNTY HOSPITAL DISTRICT,**

      **Defendants.**

## ORDER

This cause comes before the Court on three Motions for Summary Judgment (Docs. 81, 82 & 102) filed by Defendants North Brevard County Hospital District d/b/a Parrish Medical Center ("PMC") and Orlando Health, Inc. d/b/a Arnold Palmer Hospital for Children ("OHI"); two responses (Docs. 101 and 107) filed by Plaintiffs Dorothy McCullum and Jimmy Frazier as parents of D.F.; and two replies (Docs. 108 & 109) filed by PMC and OHI. The Court also held a hearing on the matter on March 19, 2013.

### I.   Background

The Amended Complaint asserts two causes of action against PMC and OHI, violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et seq, (Counts I & II); and violation of section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 706 (Count III). The essential facts, taken in a light most favorable to the Plaintiffs, are as follows. North Brevard County Hospital District is an independent special district under Florida law that operates PMC, a public hospital in Titusville, Florida. At all relevant times, PMC had a policy

titled "Communication with Impaired or Language-Barrier Patients" which provides that PMC will communicate with a patient in his preferred method—including sign language if applicable. Any staff member or physician has authority to obtain a sign language interpreter and PMC has an "agreement" with American Sign Language Services, Inc., to provide such services when necessary. OHI operates Arnold Palmer Hospital for Children in Orlando, Florida. At all relevant times, OHI had a policy to provide sign language interpreters to deaf patients upon request and any staff member or physician has authority to obtain an interpreter pursuant to this policy.

D.F. (the operative Plaintiff in this case, represented by his parents Dorothy McCullum ("McCullum") and Jimmy Frazier ("Frazier"))[1] has a congenital hearing impairment rendering him completely deaf. At all relevant times he was fourteen years old, communicated primarily through American Sign Language, and had only a "first-grade understanding" of the English language. McCullum and Frazier both rely primarily on "home signs" and "finger spelling the ASL alphabet" when communicating with D.F.; their competence in American Sign Language—at the time at least—was "extremely limited." D.F.'s ten year old sister, T.F. was present during a portion of the relevant events and communicates primarily through American Sign Language, but has the same hearing impairment as her brother.

On March 19, 2009, D.F. was brought to the emergency room at PMC experiencing severe abdominal pain and vomiting. Eventually, it was determined that he suffered from "ulcerative colitis," a serious medical condition which ultimately resulted in the removal of D.F.'s large intestine. His stay at PMC lasted from March 19, 2009, until he was transferred to OHI in Orlando on April 8, 2009.[2]

---

[1] Plaintiffs initially asserted claims based on their associational standing, but the Court dismissed those claims. (Doc. 24).

[2] D.F. was also admitted to OHI on December 8, 2009, for a scheduled "anal rectal pull

- 2 -

Though the precise interactions are disputed, the parties appear to agree that no interpreter was ever specifically requested by Plaintiffs or offered by either OHI or PMC.[3] OHI claims, however, that there were signs at the nurse's station, handouts, and a form given upon admission soliciting a patient's communication preferences. The parties also agree that one PMC nurse assigned to D.F., Kimberly Dahn, attempted to communicate in sign language during her shifts, but the effectiveness of this communication is disputed. Dahn worked from 7:00pm to 7:00am three nights during the week and had some interaction with D.F. during these shifts. She took several sign language classes in high school and college but is not a qualified sign language interpreter. Prior to becoming a nurse at PMC, she worked as a speech therapist where she used sign language on a daily basis. D.F. claims in deposition, however, that Dahn did not know ASL and that her signs were "very English." Besides Dahn, no other interpreter was provided to D.F.; the majority of information was communicated to D.F. through his parents who were present at all times during his stay at both hospitals.

The effectiveness of the communication between D.F. and his parents while at PMC and OHI is unclear. Plaintiffs claim in deposition that the stress and emotion of D.F.'s treatment made communication difficult, as did the complexity, length, and importance of the information conveyed. McCullum and Frazier relied primarily on "home signs" supplemented by their limited understanding of ASL to convey the necessary information, but were unable to sufficiently

---

through procedure."

[3] Plaintiffs do not dispute that no request was made, despite evidence which suggests otherwise. In her deposition, McCullum admits that she never requested an interpreter. (Deposition of McCullum, Doc. 74-4 at 28:2-4). Plaintiffs appear to ignore, or discount, conflicting evidence in D.F.'s deposition in which he claims "my mom told them that I needed an interpreter. They kept telling them over and over again." (Deposition of D.F., Doc. 74-3 at 4:16-18).

communicate with D.F. Defendants claim that neither D.F. or the parents ever expressed any displeasure with the situation, or indicated in any direct way that communication was strained.

## II.     Standard

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770

F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

### III. Analysis

Defendants move for summary judgment on Plaintiffs claims for compensatory damages and injunctive relief under the ADA and RA. Each will be addressed in turn.

To establish a prima facie case of discrimination Plaintiffs must show (1) that D.F. is a qualified individual with a disability; (2) that he was excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity; (3) by reason of such disability. 42 U.S.C. § 12132; *Shotz v. Catz*, 256 F.3d 1077, 1079 (11th Cir. 2001).[4] It is undisputed that D.F. is a qualified individual with a disability.

Applicable regulations in effect at the time of the events in this case require that an entity "furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1) (2009). Further, "[i]n determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities." 28 C.F.R. § 35.106(b)(2) (2009).[5] The task of

---

[4] The elements of ADA and RA claims are the same in all relevant respects. *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000).

[5] As explained in *Liese*,

> . . . the proper inquiry is whether the auxiliary aid that a hospital provided to its hearing-impaired patient gave that patient an equal opportunity to benefit from the hospital's treatment.
>
> Whether a particular aid is effective in affording a patient an equal opportunity to benefit from medical treatment largely depends on context, including, principally, the nature, significance, and complexity of the

determining whether an entity has provided "appropriate auxiliary aids where necessary" is highly fact intensive and generally not appropriate for summary judgment. *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 342-43 (11th Cir. 2012) (citing *Chisolm v. McManimon*, 275 F.3d 315, 327 (3d Cir. 2001) ("Generally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment."); *Randolph v. Rodgers*, 170 F.3d 850, 859 (8th Cir. 1999) (finding that whether a sign language interpreter was required under the RA is a question of fact inappropriate for summary judgment); and *Duffy v. Riveland*, 98 F.3d 447, 454–56 (9th Cir. 1996) (concluding that whether qualified sign language interpreter was required under the Americans with Disabilities Act of 1990 is a question of fact inappropriate for summary judgment)).

**Compensatory Damages**

To recover compensatory damages under the Rehabilitation Act and the ADA, a plaintiff must demonstrate "intentional discrimination or bad faith." *Badillo v. Thorpe*, 158 Fed. App'x 208, 214 (11th Cir. 2005) (citing *Wood v. President & Trs. of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214, 1219 (11th Cir. 1992)).[6] In other words, "good faith attempts to pursue legitimate

---

> treatment. For example, emergency surgery is often a complicated concept to convey to a person who can hear well; the attendant risks, manner of surgery, prognosis, and advantages or disadvantages of immediate or postponed surgery can only complicate this communicative task. Thus, under circumstances in which a patient must decide whether to undergo *immediate* surgery involving the removal of an organ under a general anesthetic, understanding the necessity, risks, and procedures surrounding the surgery is paramount. Under these circumstances, auxiliary aids limited to written notes, body gestures, and lipreading may be ineffective in ensuring that a hearing-impaired patient receives equal opportunity to benefit from the treatment.

*Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012).

[6] "Because the ADA relies on sections of the Rehabilitation Act to determine available remedies," the following rule "appl[ies] to the ADA as well as the Rehabilitation Act." *Outlaw v. City of Dothan, Ala.,* 1993 WL 735802 at *5 (M.D. Ala. Apr. 27, 1993); *see also Sutton v. Lader*,

ends are not sufficient to support an award of compensatory damages . . . ." *Id*. Recently in *Liese v. Indian River County Hospital District*, the Eleventh Circuit held that the deliberate indifference standard was proper for determining discrimination under the RA. 701 F.3d 334, 348 (11th Cir. 2012). To establish deliberate indifference, Plaintiff must show that "the defendant *knew* that harm to a federally protected right was substantially likely and . . . *failed* to act on that likelihood." *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012) (quoting *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 610 (11th Cir. 2010). Deliberate indifference is an "exacting standard," *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1254–55 (11th Cir. 2010), as the indifference must be the result of a "deliberate choice." *Liese*, 701 F.3d at 344 (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)). Negligence, even if gross, is not enough. *Id*. (citing *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)).

The parties agree that Plaintiffs never requested or otherwise specifically indicated a desire for a sign language interpreter. Defendants can still be liable, however, so long as D.F.'s communication difficulties were sufficiently obvious to put them on notice that additional auxiliary aids were needed to ensure effective communication. *C.f., Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1197 (10th Cir. 2007); *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 164 (5th Cir. 1996) (noting the "ADA requires employers to reasonably accommodate limitations, not disabilities"). This knowledge may derive either from an individual's request, or where the need is obvious. *Robertson*, 500 F.3d at 1197 (citing *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006) (noting, in a Title II case that, "the ADA's reasonable accommodation requirement usually does not apply unless triggered by a request," but

---

185 F.3d 1203, 1207-08, n. 5 (11th Cir. 1999).

"sometimes the person's [disability and concomitant] need for an accommodation will be obvious; and in such cases, different rules may apply" (alteration, quotation, and citation omitted)).[7] Defendants have pointed out a lack of evidence on this issue, accordingly, Plaintiffs must provide some evidence to suggest that, in the absence of a request, Defendants "knew that harm to a federally protected right was substantially likely."

It is undisputed that Defendants knew that D.F. was deaf and that he was largely unable to participate in his treatment and ask questions. Plaintiffs argue that this is sufficient to infer deliberate indifference, but they cite no authority for this proposition. On the contrary, in *Liese* there was sufficient evidence to survive summary judgment because the plaintiff specifically requested an interpreter at least three times and told the treating doctor that she had trouble reading lips. Further,

> when Dr. Perry began explaining that she needed to have her gallbladder removed, Liese asked why she was having surgery on her stomach when she was experiencing chest pain. Dr. Perry's response to this question was to write down, 'remove it and you'll feel better.' The next day, on the morning of her surgery, Liese repeated her request for an interpreter and again asked why she needed the surgery. A reasonable juror could well find from these facts that Dr. Perry knew that he was not effectively communicating with Liese, despite his attempts at pantomime, and that Liese needed more substantive interpretive aids to understand the nature of and need for her surgery.

*Liese*, 701 F.3d at 351. This case is materially different. Neither D.F. nor his parents ever requested an interpreter and although communication may have been difficult, there is no evidence

---

[7] *See also Reed v. LePage Bakeries, Inc*., 244 F.3d 254, 261 n. 7 (1st Cir. 2001) (noting, in a Title I case, that a request for an accommodation may not be required when the disabled individual's needs are "obvious"); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) ("When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required ...." (emphasis added)).

that Defendants knew[8] that harm was occurring (or likely to occur) and made a deliberate choice not to act on that knowledge. Plaintiffs assume, contrary to controlling law, that the duty to provide auxiliary aids springs solely from the fact that D.F. is deaf, and further, that the only appropriate aid is a qualified interpreter. Defendants' duty under the ADA and RA, however, is simply to provide appropriate auxiliary aids when necessary—taking into account a disabled person's requests. *See supra*, note 5. Deliberate indifference cannot be inferred simply because D.F. is deaf and Defendants failed to provide an interpreter when none was requested. For that reason, summary judgment will be granted in favor of Defendants on Plaintiffs' claim for compensatory damages.

**Injunctive Relief**

In order to establish standing for injunctive relief, a Plaintiff must show, at a minimum, (1) injury in fact, that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The threatened harm must be real and immediate, as opposed to merely conjectural or hypothetical threat of future injury. *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). In RA and ADA claims for injunctive relief, a plaintiff must demonstrate a likelihood of actually returning to the defendant's

---

[8] For a violation to be attributable to Defendants, the decision in question must be of an official whose acts can fairly be said to represent the actions of an organization. *Liese*, 701 F.3d at 349. In the § 504 context at least, the Eleventh Circuit held in *Liese,* that "an official is someone who enjoys substantial supervisory authority within an organization's chain of command so that, when dealing with the complainant, the official had complete discretion at a 'key decision point' in the administrative process." *Id*. at 350. "The 'key decision point' language reflects the practical reality that, while some decisions are technically subject to review by a higher authority, such a review is not part of the entity's ordinary decision-making process." *Id*. In that case, which also involved a claim for failure to provide necessary auxiliary aids to a deaf individual, the Eleventh Circuit found that doctors were such 'officials.'

facility. *See Connors v. West Orange Healthcare Dist.*, No. 6:05-cv-647-ORL-31KRS, 2005 WL 1500899 (M.D. Fla. June 23, 2005).

This claim previously survived dismissal because Plaintiffs alleged that D.F. has a serious medical condition that will require frequent hospital visits throughout his life, that PMC is the closest hospital to his home, that OHI is a specialty hospital that would ultimately treat any serious condition, and that both hospitals maintain a practice of denying interpreters to deaf patients. The record on summary judgment, however, does not support these allegations. Although D.F.'s condition was serious in 2009, it has stabilized in the four years since. He has not been admitted to any hospital (as an inpatient) since the events in this case and Plaintiffs point to no present issues that could result in a need for emergency care. D.F.'s condition may be "chronic," according to Plaintiffs, but there is no evidence that it is untreated, or that it may result in some emergent episode. This "hypothetical injury" is inappropriate to sustain a claim for injunctive relief.

It is therefore,

**ORDERED** that Defendants' Motions for Summary Judgment (Docs. 81, 82, 102) are **GRANTED**.

**DONE** and **ORDERED** in Orlando, Florida on March 25, 2013.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties